Justice Breyer,
with whom Justice Ginsburg, Justice Sotomayor, and Justice Kagan join, dissenting.
The Fair Labor Standards Act of 1938 (FLSA) exempts from federal maximum hour and minimum wage requirements “any employee employed ... in the capacity of outside salesman.” 29 U. S. C. § 213(a)(1). The question is whether drug company detailers fall within the scope of the term “outside salesman.” In my view, they do not.
I—I
The Court describes the essential aspects of the detailer’s job as follows: First, the detailer “provide[s] information to physicians about the company’s products in hopes of persuading them to write prescriptions for the products in appropriate cases.” Ante, at 150. Second, the detailers “cal[l] on physicians in an assigned sales territory to discuss the fea *170 tures, benefits, and risks of an assigned portfolio of respondent’s prescription drugs,” and they seek a “nonbinding commitment from the physician to prescribe those drugs in appropriate cases . . . .” Ante, at 151 (footnote omitted). Third, the detailers’ compensation includes an “incentive” element “based on the sales volume or market share of their assigned drugs in their assigned sales territories.” Ibid. The Court adds that the detailers work with “only minimal supervision” and beyond normal business hours “attending events, reviewing product information, returning phone calls, responding to e-mails, and performing other miscellaneous tasks.” Ibid.
As summarized, I agree with the Court’s description of the job. In light of important, near-contemporaneous differences in the Justice Department’s views as to the meaning of relevant Labor Department regulations, see ante, at 153-154, I also agree that we should not give the Solicitor General’s current interpretive view any especially favorable weight, ante, at 159. Thus, I am willing to assume, with the Court, that we should determine whether the statutory term covers the detailer’s job as here described through our independent examination of the statute’s language and the related Labor Department regulations. But, I conclude on that basis that a detailer is not an “outside salesman.”
⅜—I
The FLSA does not itself define the term “outside salesman.” Rather, it exempts from wage and hour requirements “any employee employed ... in the capacity of outside salesman (as such terms are defined and delimited from time to time by regulations of the Secretary) ” 29 U. S. C. § 213(a)(1) (emphasis added). Thus, we. must look to relevant Labor Department regulations to answer the question. See Chevron U. S. A. Inc. v. Natural Resources Defense Council, Inc., 467 U. S. 837 (1984); see also Long Island Care at Home, Ltd. v. Coke, 551 U. S. 158, 165 (2007) (explaining that “the FLSA explicitly leaves gaps” to be filled by regulations).
*171 There are three relevant regulations. The first is entitled “General rule for outside sales employees,” 29 CFR § 541.500 (2011); the second is entitled “Making sales or obtaining orders,” § 541.501; and the third is entitled “Promotion work,” § 541.503. The relevant language of the first two regulations is similar. The first says that the term “‘employee employed in the capacity of outside salesman’ . . . shall mean any employee . . . [w]hose primary duty is: (i) making sales within the meaning of section 3(k) of the Act, or (ii) obtaining orders or contracts for services or for the use of facilities . . . .” § 541.500(a)(1). The second regulation tells us that the first regulation “requires that the employee be engaged in . . . (1) Making sales within the meaning of section 3(k) of the Act, or (2) Obtaining orders or contracts for services or for the use of facilities.” § 541.501(a).
The second part of these quoted passages is irrelevant here, for it concerns matters not at issue, namely, “orders or contracts for services or for the use of facilities.” The remaining parts of the two regulations are similarly irrelevant. See Appendix, infra. Thus, the relevant portions of the first two regulations say simply that the employee’s “primary duty” must be “making sales within the meaning of section 3(k) of the Act.” And § 3(k) of the Act says that the word “ ‘Sale’ or ‘sell’ includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition.” 29 U. S. C. § 203(k).
Unless we give the words of the statute and regulations some special meaning, a detailer’s primary duty is not that of “making sales” or the equivalent. A detailer might convince a doctor to prescribe a drug for a particular kind of patient. If the doctor encounters such a patient, he might prescribe the drug. The doctor’s client, the patient, might take the prescription to a pharmacist and ask the pharmacist to fill the prescription. If so, the pharmacist might sell the manufacturer’s drug to the patient, or might substitute a generic version. But it is the pharmacist, not the detailer, who will have sold the drug.
*172 To put the same fairly obvious point in the language of the regulations and of §3(k) of the FLSA, see 29 U. S. C. §203(k), the detailer does not “sell” anything to the doctor. See Black’s Law Dictionary 1454 (9th ed. 2009) (defining “sale” as “[t]he transfer of property or title for a price”). Nor does he, during the course of that visit or immediately thereafter, “exchange” the manufacturer’s product for money or for anything else. He enters into no “contract to sell” on behalf of anyone. He “consign[s]” nothing “for sale.” He “ship[s]” nothing for sale. He does not “disposje]” of any product at all.
What the detailer does is inform the doctor about the nature of the manufacturer’s drugs and explain their uses, their virtues, their drawbacks, and their limitations. The detailer may well try to convince the doctor to prescribe the manufacturer’s drugs for patients. And if the detailer is successful, the doctor will make a “nonbinding commitment” to write prescriptions using one or more of those drugs where appropriate. If followed, that “nonbinding commitment” is, at most, a nonbinding promise to consider advising a patient to use a drug where medical indications so indicate (if the doctor encounters such a patient), and to write a prescription that will likely (but may not) lead that person to order that drug under its brand name from the pharmacy. (I say “may not” because 30% of patients in a 2-year period have not filled a prescription given to them by a doctor. See USA Today, Kaiser Family Foundation, Harvard School of Public Health, The Public on Prescription Drugs and Pharmaceutical Companies 3 (2008), online at http://www.kff.org/ kaiserpolls/upload/7748.pdf (all Internet materials as visited June 13, 2012, and available in Clerk of Court’s case file). And when patients do fill prescriptions, 75% are filled with generic drugs. See Dept, of Health and Human Services, Office of the Assistant Secretary for Planning and Evaluation, Office of Science and Data Policy, Expanding the Use of Generic Drugs 2 (2010).)
*173 Where in this process does the detailer sell the product? At most he obtains from the doctor a “nonbinding commitment” to advise his patient to take the drug (or perhaps a generic equivalent) as well as to write any necessary prescription. I put to the side the fact that neither the Court nor the record explains exactly what a “nonbinding commitment” is. Like a “definite maybe,” an “impossible solution,” or a “theoretical experience,” a “nonbinding commitment” seems to claim more than it can deliver. Regardless, other than in colloquial speech, to obtain a commitment to advise a client to buy a product is not to obtain a commitment to sell that product, no matter how often the client takes the advice (or the patient does what the doctor recommends).
The third regulation, entitled “Promotion work,” lends support to this view. That is because the detailer’s work as described above is best viewed as promotion work. The regulation makes clear that promotion work falls within the statutory exemption only when the promotion work “is actually performed incidental to and in conjunction with an employee’s own outside sales or solicitations.” 29 CFR § 541.503(a) (emphasis added). But it is not exempt if it is “incidental to sales made, or to be made, by someone else.” Ibid.
The detailer’s work, in my view, is more naturally characterized as involving “[promotional activities designed to stimulate sales ... made by someone else,” § 541.503(b), e. g., the pharmacist or the wholesaler, than as involving “[promotional activities designed to stimulate” the detailer’s “own sales.”
Three other relevant documents support this reading. First, the Pharmaceutical Research and Manufacturers of America (PhRMA), of which respondent is a member, publishes a “Code on Interactions with Healthcare Professionals.” See PhRMA, Code on Interactions with Healthcare Professionals (rev. July 2008) (PhRMA Code), online at http://www. phrma.org/sites/default/files/108/phrma_marketing_code_ *174 2008.pdf. The PhRMA Code describes a detailer’s job in some depth. It consistently refers to detailers as “delivering accurate, up-to-date information to healthcare professionals,” id., at 14, and it stresses the importance of a doctor’s treatment decision being based “solely on each patient’s medical needs” and the doctor’s “medical knowledge and experience,” id., at 2. The PhRMA Code also forbids the offering or providing of anything “in a manner or on conditions that would interfere with the independence of a healthcare professional’s prescribing practices.” Id., at 13. But the PhRMA Code nowhere refers to detailers as if they were salesmen, rather than providers of information, nor does it refer to any kind of commitment.
To the contrary, the document makes clear that the pharmaceutical industry itself understands that it cannot be a detailer’s “primary duty” to obtain a nonbinding commitment, for, in respect to many doctors, such a commitment taken alone is unlikely to make a significant difference to their doctor’s use of a particular drug. When a particular drug, say Drug D, constitutes the best treatment for a particular patient, a knowledgeable doctor should (hence likely will) prescribe it irrespective of any nonbinding commitment to do so. Where some other drug, however, is likely to prove more beneficial for a particular patient, that doctor should not (hence likely will not) prescribe Drug D irrespective of any nonbinding commitment to the contrary.
At a minimum, the document explains why a detailer should not (hence likely does not) see himself as seeking primarily to obtain a promise to prescribe a particular drug, as opposed to providing information so that the doctor will keep the drug in mind with an eye toward using it when appropriate. And because the detailer’s “primary duty” is informational, as opposed to sales oriented, he fails to qualify as an outside salesman. See § 541.500(a)(1)(i) (restricting the outside salesman exemption to employees “[wjhose primary duty is . . . making sales” (emphasis added)). A detailer operating in accord with the PhRMA Code “sells” the product *175 only in the way advertisers (particularly very low key advertisers) “sell” a product: by creating demand for the product, not by taking orders.
Second, a Labor Department Wage and Hour Division report written in 1940 further describes the work of “sales promotion men.” See Report and Recommendations of the Presiding Officer at Hearings Preliminary to Redefinition (1940 Report). The 1940 Report says that such individuals “pav[e] the way” for sales by others. Id., at 46. “Frequently,” they deal “with [the] retailers who are not customers of [their] own employer but of [their] employer’s customer.” Ibid. And they are “primarily interested in sales by the retailer, not to the retailer.” Ibid. “[T]hey do not make actual sales,” and they “are admittedly not outside salesmen.” Ibid.
Like the “sales promotion men,” the detailers before us deal with individuals, namely, doctors, “who are not customers” of their own employer. And the detailers are primarily interested in sales authorized by the doctor, not to the doctor. According to the 1940 Report, sales promotion men are not “outside salesmen,” primarily because they seek to bring about not their own sales but sales by others. Thus, the detailers in this case are not “outside salesmen.”
Third, a Wage and Hour Division Report written in 1949 notes that where “work is promotional in nature it is sometimes difficult to determine whether it is incidental to the employee’s own sales work.” See Dept. of Labor, Wage and Hour and Public Contracts Divs., Report and Recommendations on Proposed Revisions of Regulations, Part 541, p. 82 (1949) (1949 Report). It adds that in borderline cases
“the test is whether the person is actually engaged in activities directed toward the consummation of his own sales, at least to the extent of obtaining a commitment to buy from the person to whom he is selling. If his efforts are directed toward stimulating the sales of his company generally rather than the consummation of his *176 own specific sales his activities are not exempt.” Id., at 83 (emphasis added).
The 1949 Report also refers to a
“company representative who visits chain stores, arranges the merchandise on shelves, replenishes stock . . . , consults with the manager as to the requirements of the store, fills out a requisition for the quantity wanted and leaves it with the store manager to be transmitted to the central warehouse of the chain-store company which later ships the quantity requested.” Id., at 84.
It says this company representative is not an “outside salesman” because he
“does not consummate the sale nor direct his efforts toward the consummation of a sale (the store manager often has no authority to buy).” Ibid.
See also 29 CFR § 541.503(c) (explaining that if an employee “does not consummate the sale nor direct efforts toward the consummation of a sale, the work is not exempt outside sales work”).
A detailer does not take orders, he does not consummate a sale, and he does not direct his efforts toward the consummation of any eventual sale (by the pharmacist) any more than does the “company[’s] representative” in the 1949 Report's example. The doctor whom the detailer visits, like the example’s store manager, “has no authority to buy.”
Taken together, the statute, regulations, ethical codes, and Labor Department Reports indicate that the drug detailers do not promote their “own sales,” but rather “sales made, or to be made, by someone else.” Therefore, detailers are not “outside salesmen.”
Ill
The Court’s different conclusion rests primarily upon its interpretation of the statutory words “other disposition” as “including those arrangements that are tantamount, in a par *177 ticular industry, to a paradigmatic sale of a commodity.” Ante, at 164. Given the fact that the doctor buys nothing, the fact that the detailer sells nothing to the doctor, and the fact that any “nonbinding commitment” by the doctor must, of ethical necessity, be of secondary importance, there is nothing about the detailer’s visit with the doctor that makes the visit (or what occurs during the visit) “tantamount... to a paradigmatic sale.” Ante, at 164-165. See Part I, supra.
The Court adds that “[ojbtaining a nonbinding commitment from a physician to prescribe one of respondent’s drugs is the most that petitioners were able to do to ensure the eventual disposition of the products that respondent sells.” Ante, at 165. And that may be so. But there is no “most they are able to do” test. After all, the “most” a California firm’s marketing employee may be able “to do” to secure orders from New York customers is to post an advertisement on the Internet, but that fact does not help qualify the posting employee as a “salesman.” The Court adds that it means to apply this test only when the law precludes “an entire industry . . . from selling its products in the ordinary manner.” Ibid., n. 23. But the law might preclude an industry from selling its products through an outside salesman without thereby leading the legal term “outside salesman” to apply to whatever is the next best thing. In any event, the Court would be wrong to assume, if it does assume, that there is in nearly every industry an outside salesman lurking somewhere (if only we can find him). An industry might, after all, sell its goods through wholesalers or retailers, while using its own outside employees to encourage sales only by providing third parties with critically important information.
The Court expresses concern lest a holding that detailers are not “salesmen” lead to holdings that the statute forbids treating as a “salesman” an employee “who takes an order from a retailer but then transfers the order to a jobber’s employee to be filled,” ante, at 167, or “a car salesman who *178 receives a commitment to buy but then asks his or her assistant to enter the order into the computer,” ibid. But there is no need for any such fear. Both these examples involve employees who are salesmen because they obtain a firm commitment to buy the product. See 1949 Report 83 (as to the first example, such an employee “has obtained a commitment from the customer”); 69 Fed. Reg. 22163 (2004) (as to the second example, explaining that “[e]xempt status should not depend on . . . who types the order into a computer,” but maintaining requirement that a salesman “obtai[n] a commitment to buy from the person to whom he is selling”). The problem facing the detailer is that he does not obtain any such commitment.
Finally, the Court points to the detailers’ relatively high pay, their uncertain hours, the location of their work, their independence, and the fact that they frequently work overtime, all as showing that detailers fall within the basic purposes of the statutory provision that creates exceptions from wage and hour requirements. Ante, at 151-152. The problem for the detailers, however, is that the statute seeks to achieve its general objectives by creating certain categories of exempt employees, one of which is the category of “outside salesman.” It places into that category only those who satisfy the definition of “outside salesman” as “defined and delimited from time to time by regulations of the Secretary.” 29 U. S. C. § 213(a)(1) (emphasis added). And the detail-ers do not fall within that category as defined by those regulations.
For these reasons, with respect, I dissent.
APPENDIX
1. Title 29 CFR § 541.500 (2011) provides:
“General rule for outside sales employees.
“(a) The term ‘employee employed in the capacity of outside salesman’ in section 13(a)(1) of the Act shall mean any employee:
*179 “(1) Whose primary duty is:
“(i) making sales within the meaning of section 3(k) of the Act, or
“(ü) obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer; and
“(2) Who is customarily and regularly engaged away from the employer’s place or places of business in performing such primary duty.
“(b) The term ‘primary duty’ is defined at §541.700. In determining the primary duty of an outside sales employee, work performed incidental to and in conjunction with the employee’s own outside sales or solicitations, including incidental deliveries and collections, shall be regarded as exempt outside sales work. Other work that furthers the employee’s sales efforts also shall be regarded as exempt work including, for example, writing sales reports, updating or revising the employee’s sales or display catalogue, planning itineraries and attending sales conferences.
“(c) The requirements of subpart G (salary requirements) of this part do not apply to the outside sales employees described in this section.”
2. Title 29 CFR § 541.501 provides:
“Making sales or obtaining orders.
“(a) Section 541.500 requires that the employee be engaged in:
“(1) Making sales within the meaning of section 3(k) of the Act, or
“(2) Obtaining orders or contracts for services or for the use of facilities.
“(b) Sales within the meaning of section 3(k) of the Act include the transfer of title to tangible property, and in certain cases, of tangible and valuable evidences of intangible property. Section 3(k) of the Act states that *180 ‘sale’ or ‘sell’ includes any sale, exchange, contract to sell, consignment for sale, shipment for sale, or other disposition.
“(c) Exempt outside sales work includes not only the sales of commodities, but also ‘obtaining orders or contracts for services or for the use of facilities for which a consideration will be paid by the client or customer.’ Obtaining orders for ‘the use of facilities’ includes the selling of time on radio or television, the solicitation of advertising for newspapers and other periodicals, and the solicitation of freight for railroads and other transportation agencies.
“(d) The word ‘services’ extends the outside sales exemption to employees who sell or take orders for a service, which may be performed for the customer by someone other than the person taking the order.”
3. Title 29 CFR §541.503 provides:
“Promotion work.
“(a) Promotion work is one type of activity often performed by persons who make sales, which may or may not be exempt outside sales work, depending upon the circumstances under which it is performed. Promotional work that is actually performed incidental to and in conjunction with an employee’s own outside sales or solicitations is exempt work. On the other hand, promotional work that is incidental to sales made, or to be made, by someone else is not exempt outside sales work. An employee who does not satisfy the requirements of this subpart may still qualify as an exempt employee under other subparts of this rule.
“(b) A manufacturer’s representative, for example, may perform various types of promotional activities such as putting up displays and posters, removing damaged or spoiled stock from the merchant’s shelves or rearranging the merchandise. Such an employee can be *181 considered an exempt outside sales employee if the employee’s primary duty is making sales or contracts. Promotion activities directed toward consummation of the employee’s own sales are exempt. Promotional activities designed to stimulate sales that will be made by someone else are not exempt outside sales work.
“(c) Another example is a company representative who visits chain stores, arranges the merchandise on shelves, replenishes stock by replacing old with new merchandise, sets up displays and consults with the store manager when inventory runs low, but does not obtain a commitment for additional purchases. The arrangement of merchandise on the shelves or the replenishing of stock is not exempt work unless it is incidental to and in conjunction with the employee’s own outside sales. Because the employee in this instance does not consummate the sale nor direct efforts toward the consummation of a sale, the work is not exempt outside sales work.”